Lee Radford, ISB No. 5719
Bradley J Williams, ISB No. 4019
David J. Dance, ISB No. 7958
MOFFATT, THOMAS, BARRETT, ROCK &
    FIELDS, CHARTERED
420 Memorial Drive
Post Office Box 51505
Idaho Falls, Idaho  83405
Telephone  (208) 522-6700
Facsimile  (208) 522-5111
klr@moffatt.com

Attorneys for Plaintiffs


## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

### EASTERN DIVISION

| | |
|---|---|
| MACH 1 MERCHANTING, LLC,<br>an Idaho limited liability company;<br>SHANE FISHER, an individual; and<br>JEREMY LIVINGSTON, an individual; | Case No. 4:09-CV-00484 |
| Plaintiffs, | **AMENDED COMPLAINT** |
| vs. | |
| JOEL SECHRIST, an individual; | |
| Defendant. | |

JOEL SECHRIST,

                    Counterclaim Plaintiff,

vs.

MACH1 MERCHANTING, LLC, an Idaho
limited liability company; SHANE FISHER,
an individual; and JEREMY LIVINGSTON,
an individual

                    Counterclaim Defendants.


**AMENDED COMPLAINT**                    - 1 -
Client:1577467.1

JOEL SECHRIST,

               Third-Party Claimant,

v.

BLAZE PROCESSING, LLC, an Idaho
Limited Liability Company

               Third-Party Defendant.

COMES NOW, plaintiff Mach 1 Merchanting, LLC, an Idaho limited liability

company, ("Mach 1"), Shane Fisher, an individual ("Fisher"), and Jeremy Livingston, an

individual ("Livingston") (together referred to as "Plaintiffs") by and through their attorneys of

record, Moffatt, Thomas, Barrett, Rock & Fields, Chtd., and hereby complain and allege against

Joel Sechrist, an individual, ("Sechrist") as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Mach 1 is an Idaho limited liability company, with its principal

place of business in the County of Bonneville, State of Idaho.

2.     Plaintiff Shane Fisher, an individual, is a resident of the County of

Bonneville, State of Idaho.

3.     Plaintiff Jeremy Livingston, an individual, is a resident of the County of

Jefferson, State of Idaho.

4.     Defendant Sechrist, an individual, is a resident of the County of Utah,

State of Utah.

**AMENDED COMPLAINT**
Client:1577467.1

                    - 2 -

5.      Defendant Sechrist is subject to the jurisdiction of this Court for the causes of action set forth herein which arose from the transaction of business within an Idaho limited liability company for the purpose of realizing pecuniary benefit in the State of Idaho.

6.      Defendant Sechrist is also subject to the general jurisdiction of this Court for the causes of action set forth herein due to his personal contacts with the State of Idaho.

## FORMATION OF MACH 1

7.      Prior to 2008, Livingston had developed a close relationship with a company headquartered in Utah that specialized in internet and call center marketing of products and services. Because of the nature of its business, this company had a need for credit card transaction services, including merchant processing services, for its large volumes of credit card processing arising from its sales.

8.      This company had previously attempted to hire Livingston in order to help handle credit card processing and the setting up and servicing of merchant processing accounts. Livingston was aware of this company's need for merchant processing services.

9.      Subsequent to this time, Livingston and Fisher investigated a merchant account service provider who purported to be able to meet the Utah company's needs. Sechrist had communicated with Livingston about this merchant account service provider, and wanted Livingston to sell the services of the merchant account service provider to the Utah company. A company called Blue Ocean Enterprises, LLC, was formed in anticipation of meeting the Utah company's needs through this merchant account service provider.

10.      As a result of this investigation, it was concluded that this merchant service provider was not appropriate for the needs of the Utah company, and it was decided that Blue Ocean Enterprises, LLC, should be dissolved.

**AMENDED COMPLAINT**
Client:1577467.1

- 3 -

11.     In spite of this, the Utah company continued to need assistance with its merchant processing and credit card transactions.  Fisher and Livingston decided to form a company that would focus on providing service and assistance to merchants utilizing credit card processing, particularly in the area of merchants making sales via the internet.

12.     This company, named Mach 1 Merchanting, LLC, was organized by means of a Certificate of Organization filed by Shane Fisher with the Idaho Secretary of State on or about January 27, 2009.  The Certificate of Organization listed Shane Fisher as a member of Mach 1.

13.     In connection with these efforts regarding these companies, Sechrist expressed his desire to become a member of these companies formed to provide merchant processing services.  As a result, Livingston, Fisher, and Sechrist discussed the initial contribution each of them would make in exchange for their membership interest in these companies.

14.     Fisher agreed to contribute cash capital to provide start-up expenses for the company, and to pay for expenses during the initial periods of operation of the company. Fisher provided these contributions to the company, which were critical to the inception of the company.

15.     Livingston agreed to contribute the business relationship he had with the Utah company, and the merchant processing revenue arising from services provided pursuant to that relationship.  Livingston transferred this relationship to the company, and the company has used that relationship to create a significant stream of revenue from the services provided as a result of this relationship.

**AMENDED COMPLAINT**                                             - 4 -

16.    Sechrist agreed to contribute a business relationship he had with a call center located in Utah, and the revenues resulting from that relationship with the call center. Sechrist explained that he had been working on this relationship for some time previously, that this contribution was expected to be of significant value, as a result of the amount of sales the call center was expected to generate, and as a source of referrals for merchant processing clients.

17.    Unlike Livingston and Fisher, Sechrist has never transferred the contribution he promised.  No revenues have resulted to the company from the contribution of the call center business relationship Sechrist agreed to provide.

### OPERATIONS OF MACH 1 AND
### DISPUTE REGARDING COMPENSATION

18.    From the inception of this business, through August 2009, Livingston and Fisher worked diligently to develop the business relationships of the company in the area of providing services to merchants utilizing credit card processing.  This work included generating sales to the merchants, and providing extensive labor in the form of support and service to meet the credit card processing needs for these merchants.

19.    As a result of the personal work efforts of Livingston and Fisher, Mach 1 successfully developed relationships with a number of merchants.  Moreover, Mach 1 received significant revenues in exchange for the personal services provided by Livingston and Fisher to these customers utilizing credit card processing.

20.    However, while Livingston and Fisher generated significant revenues from such services, at the same time, no revenues whatsoever had been derived from the call center business relationship that Sechrist was obligated to develop.

21.    During this period, Mach 1 had paid out substantial amounts of the revenues earned by Livingston and Fisher to Livingston, Fisher, and Sechrist.  On or about

**AMENDED COMPLAINT**
Client:1577467.1

- 5 -

March 25, 2009, after Mach 1 received its first revenues from the work of Fisher and Livingston, Mach 1 paid $1,000 each to Livingston, Fisher, and Sechrist.

22.     On or about April 28, 2009, after Mach 1 received further revenues from the work of Fisher and Livingston, Mach 1 paid $14,000 to Fisher, and $10,000 each to Livingston and Sechrist. This higher amount was paid to Fisher because Fisher was working more than Livingston or Sechrist during this period.

23.     Similarly, on or about May 29, 2009, after Mach 1 received further revenues from the work of Fisher and Livingston, Mach 1 paid $27,000 to Fisher, and $24,000 each to Livingston and Sechrist. Again, this higher amount was paid to Fisher because Fisher was working more than Livingston or Sechrist during this period.

24.     Similarly, on or about July 6, 2009, after Mach 1 received further revenues from the work of Fisher and Livingston, Mach 1 paid $36,000 to Fisher, and $32,000 each to Livingston and Sechrist. Again, this higher amount was paid to Fisher because Fisher was working more than Livingston or Sechrist during this period.

25.     By August 2009, Sechrist still had not produced any revenue for Mach 1. Fisher and Livingston had become increasingly concerned that Sechrist had not delivered on the contribution he had promised. Sechrist had not provided any revenues whatsoever from the purported call center relationship, and it appeared to Fisher and Livingston that Sechrist was not working to make this contribution.

26.     As a result, on or about August 11, 2009, after Mach 1 had received another batch of revenues from the work of Fisher and Livingston, a payment of $40,000 each was made to Fisher and Livingston, and a payment of $25,000 to Sechrist. The higher amount

was paid to Fisher and Livingston because both were working more than Sechrist during this period.

27.     At this point, Sechrist complained about receiving less than Fisher and Livingston.  Sechrist took the position that he had a right to a full one-third part of all revenues received by the company.  Sechrist demanded a full one-third part of all revenues received by Mach 1, regardless of the lack of revenues derived from any work he has performed.

28.     At the same time, Livingston and Fisher complained that Sechrist should not be paid without relation to the income he produced for the company, and without having made his contribution to Mach 1.

29.     To address this dispute, on August 31, 2009, Mach 1 adopted a Member Compensation Plan which compensates the members according to their performance and according to the revenues generated from the efforts of the member.  The compensation of the members since that time have been governed by the Member Compensation Plan.

30.     While Livingston and Fisher voted in favor of this Member Compensation Plan, Sechrist voted against this measure.  Sechrist took the position that the company cannot decide to pay its members based on their individual performance and merit, absent the unanimous consent and approval of all of the members.  Sechrist believed the law requires the revenues received by the company to be distributed pro rata to all members, without first paying the members a reasonable compensation for the individual labor and service those members actually expended.

## SECHRIST'S FAILURE TO MAKE CONTRIBUTION

31.     Sechrist represented that his contribution of the call center relationship would be made through a company called Idea Man Enterprises, LLC ("Idea Man").  Sechrist

was a member of this company, and the other member of this company was Doug Tolley.  This company purportedly had a contract with a call center to provide clients in exchange for a commission or fee.

32.     On or about March 2009, Sechrist had transferred his ownership interest in Idea Man to Mach 1, a step that was allegedly necessary for him to make the contribution of the purported call center relationship.  However, nothing came of this membership interest or of the call center relationship.  Mach 1 received no revenue or customers from Idea Man through this membership interest or otherwise.

33.     On August 17, 2009, the State of Utah was informed that Mach 1's membership interest in Idea Man had been transferred Mach 1 to Sechrist as an individual.  Since that time, Mach 1 has received no revenue from Idea Man, no information from Idea Man, and no reports from Idea Man regarding the call center relationship.  Since that time, Mach 1 has received nothing to indicate that Mach 1 continues as a member of Idea Man.

34.     Neither Sechrist nor Idea Man informed Mach 1, Livingston, or Fisher that this membership interest had been transferred from Mach 1 to Sechrist.  Mach 1, Livingston, and Fisher did not discover this taking of this membership interest until it was discovered on the State of Utah website much later.

35.     By taking the Idea Man membership interest in August 17, 2009, Sechrist took back the means of making his contribution to Mach 1.  By this action, Sechrist made it clear that he did not intend to make any contribution to Mach 1 in exchange for his membership interest.

## SECHRIST'S DECISION TO COMPETE AGAINST MACH 1

36.    As stated above, on or about August 11, 2009, after Mach 1 had received another batch of revenues from the work of Fisher and Livingston, a payment of $40,000 each was made to Fisher and Livingston, and a payment of $25,000 to Sechrist. The higher amount was paid to Fisher and Livingston because both were working more than Sechrist during this period, just as higher amounts had been paid to Fisher for greater work in the prior periods.

37.    After this point, Sechrist apparently decided to no longer act as a member of Mach 1, and instead act contrary to Mach 1's interests.

38.    On August 17, 2009, Sechrist took the membership interest Mach 1 held in Idea Man, and converted it to himself individually. This conduct demonstrates Sechrist's intent not to be a member of Mach 1.

39.    Sechrist also embarked on an effort to compete against Mach 1 in both areas of the services previously contemplated for the company: merchant processing and call center services.

40.    Sechrist decided to develop the call center relationship and to market the call center for his own account or for others. Sechrist also communicated to Mach 1 that he intended to work with Mach 1's clientele on whatever basis he saw fit.

41.    Since August 2009, Sechrist has never provided any information to Mach 1 regarding any effort on his part to develop or contribute the call center relationship. While Mach 1 has asked for information regarding his efforts, Sechrist has refused to provide any information whatsoever regarding these efforts.

42.    Sechrist also has not provided any revenues to Mach 1 derived from his call center relationships or services.

43.     Although Sechrist's responsibility within Mach 1 was originally for call center services, after Sechrist decided to no longer act as a member of Mach 1, Sechrist also decided to compete against Mach 1 in relation to merchant processing.

44.     For a short period of time, Mach 1 had employed a friend of Joel Sechrist's named Peter Graver. Graver was going to perform some of the service tasks associated with merchant processing.

45.     In or about April 2009, Graver signed a Confidentiality – Non-Compete Agreement ("Confidentiality Agreement"), whereby Mach 1 agreed that it would introduce Graver to Mach 1 merchant processing clients. Graver agreed in turn that, for a period of two (2) years, he would not provide services to any of Mach 1's clients and would refrain from offering any services to Mach 1 clients.

46.     In the Confidentiality Agreement, Graver also agreed that he would not use any confidential information belonging to Mach 1, including information regarding Mach 1's banks, independent services offices, and providers. Graver agreed that would use reasonable means to protect Mach 1's confidential information, including information regarding Mach 1's relationships. Graver agreed that he would not make use of the information gained while working for Mach 1 for any purpose other than performance of his responsibilities for Mach 1.

47.     Sechrist had knowledge of the terms and conditions of the Confidentiality Agreement between Mach 1 and Graver, as Sechrist was one of the signatories of the Confidentiality Agreement on behalf of Mach 1.

48.     In violation of the Confidentiality Agreement, since August 17, 2009, Sechrist and Graver have worked together to provide merchant processing services to Mach 1

**AMENDED COMPLAINT**                                    - 10 -
Client:1577467.1

clients. Sechrist and Graver have also used the information gained regarding Mach 1's providers for their own purposes and business efforts to provide merchant processing services to others.

49. Sechrist intentionally caused Graver to breach his contract with Mach 1.

50. Sechrist has not provided any information to Mach 1 regarding his efforts to provide merchant processing services, or to use Mach 1's providers  Sechrist also has not provided any revenues to Mach 1 derived from his merchant processing services.

51. Sechrist's conduct makes it clear that, after August 11, 2009, Sechrist decided not to be involved as a member of Mach 1, and decided not to act consistent with responsibilities incumbent a member of Mach 1.

## ALTERNATIVE CLAIMS

52. It is not clear whether Sechrist considers himself a member of Mach 1. On one hand, Sechrist has asserted legal claims against Mach 1 that are based entirely on the premise that he is a member of Mach 1.  Sechrist has also accepted payments from Mach 1 on account of his alleged membership interest, and he has not returned those payments.

53. At the same time, however, Sechrist has never made the contribution of the call center relationship that was the consideration for his membership interest, and has never provided any income to Mach 1 arising from that relationship.  Sechrist also took the membership interest in Idea Man from Mach 1, and appropriated it to himself.  Sechrist has never accounted for or provided to Mach 1 a single dollar of revenue that he has earned on behalf of Mach 1 from merchant processing or call center services.  Moreover, Sechrist has actively competed against Mach 1 as if he had no obligations as a member of Mach 1.

54. If Sechrist is not a member of Mach 1, then he should be required to return all of the payments made to him on account of this membership interest.

55.     On the other hand, if Sechrist is a member of Mach 1, he is responsible for the breaches of fiduciary duties and other obligations that he owes to Mach 1 as a member.

56.     For these reasons, Mach 1 asserts its claims in the alternative.  The Court should rule whether or not Sechrist is a member of Mach 1.  (*See* First Cause of Action: Membership Interest).

57.     If Sechrist is ruled not to be a member of Mach 1, Sechrist should repay the amounts he received from Mach 1 on account of the membership interest he did not have. (*See* Second Cause of Action: Unjust Enrichment / Restitution; Third Cause of Action: Repayment of Advances).

58.     In the alternative, if Sechrist is ruled to be a member of Mach 1, Sechrist should be held liable for his failure to make his contribution.  (*See* Fourth Cause of Action: Liability for Contribution).  Also, if Sechrist is ruled to be a member of Mach 1, Sechrist should be held liable for all of the revenues he has received in violation of his fiduciary duties to Mach 1.  (*See* Fifth Cause of Action: Breach of Fiduciary Duties; Sixth Cause of Action: Breach of Operating Agreement; Seventh Cause of Action: Breach of Covenant of Good Faith and Fair Dealing; Eighth Cause of Action: Conversion; Ninth Cause of Action: Constructive Fraud; Tenth Cause of Action: Breach of Fiduciary Duty – Peter Graver).

59.     Regardless of whether Sechrist is a member of Mach 1 or not, Sechrist should be held liable for his tortious interference with the contract between Mach 1 and Peter Graver.  (*See* Eleventh Cause of Action: Tortious Interference with Contract).

60.     Moreover, again in the alternative, if Sechrist is ruled to be a member of Mach 1, the Court should rule that Sechrist must make the contribution he agreed to of his relationship with the call center. (*See* Twelfth Cause of Action: Declaratory Judgment –

Contribution).  Also, if Sechrist is ruled to be a member of Mach 1, the Court should rule that it is fair to compensate the members of Mach 1 according to the services performed and income earned for the company.  (*See* Thirteenth Cause of Action: Declaratory Judgment – LLC Rights; Fourteenth Cause of Action: Declaratory Judgment – Member Compensation).

61.     Finally, if Sechrist is ruled to be a member of Mach 1, and if the Court rules that Mach 1 cannot compensate members based on performance, the Court should judicially dissolve Mach 1 because such a rule makes it impossible for the company to continue. (*See* Fifteenth Cause of Action: Dissolution).

### FIRST CAUSE OF ACTION
### Declaratory Judgment: Membership Interest

62.     Plaintiffs incorporate by way of this reference all of the allegations set forth above and reallege the same as though fully set forth herein.

63.     Sechrist does not have a membership interest in Mach 1, because he never made the contribution he agreed to provide at the inception of Mach 1.

64.     Sechrist does not have a membership interest in Mach 1, because he has manifested by his conduct against the interests of Mach 1 that he does not consider himself a member of Mach 1.

65.     Plaintiffs are entitled to declaratory judgment that Sechrist did not gain any membership interest in Mach 1, and that Sechrist is not a member of Mach 1.

66.     Plaintiffs assert this claim in the alternative, without prejudice to the other claims asserted by Plaintiffs contingent on the Court's rulings in this matter.

## SECOND CAUSE OF ACTION
### Unjust Enrichment / Restitution

67.     Plaintiffs incorporate by way of this reference all of the allegations set forth above and reallege the same as though fully set forth herein.

68.     Mach 1 made payments to Sechrist on the expectation that he would make his membership contribution, and on the assumption that he was a member of Mach 1, and on the expectation that he would work for the benefit of Mach 1.

69.     Sechrist received a benefit from Mach 1 by receiving and keeping these payments of cash.

70.     In spite of his determination to not act as a member of Mach 1, Sechrist has not returned these payments to Mach 1.  Instead, Sechrist has kept these payments.

71.     In light of the fact that Sechrist has determined not to act as a member of Mach 1 and to not make his contribution, and instead to act contrary to the interests of Mach 1, it would be inequitable for Sechrist to accept and retain the benefit of these payments without repaying Mach 1 for the value thereof.

72.     Plaintiffs assert this claim in the alternative, without prejudice to the other claims asserted by Plaintiffs contingent on the Court's rulings in this matter.

## THIRD CAUSE OF ACTION
### Repayment of Advances

73.     Plaintiffs incorporate by way of this reference all of the allegations set forth above and reallege the same as though fully set forth herein.

74.     Mach 1 advanced payments to Sechrist on the expectation that he would make his membership contribution, and on the assumption that he was a member of Mach 1, and on the expectation that he would work for the benefit of Mach 1.

75.     Because Sechrist has determined to act in ways inconsistent with being a member of Mach 1, Sechrist should repay the advances made to him.

76.     Because Sechrist has failed to make his membership contribution, Sechrist should repay the advances made to him.

77.     Because Sechrist has determined to work against the interests of Mach 1, Sechrist should repay the advances made to him.

78.     Plaintiffs assert this claim in the alternative, without prejudice to the other claims asserted by Plaintiffs contingent on the Court's rulings in this matter.

### FOURTH CAUSE OF ACTION
### Liability for Contribution

79.     Plaintiffs incorporate by way of this reference all of the allegations set forth above and reallege the same as though fully set forth herein.

80.     In the alternative, if it is adjudged that Sechrist is a member of Mach 1, Sechrist is obligated to contribute money equal to the value of the contribution which has not been made.

81.     Plaintiffs assert this claim in the alternative, without prejudice to the other claims asserted by Plaintiffs contingent on the Court's rulings in this matter.

**AMENDED COMPLAINT**                                       - 15 -
Client:1577467.1

## FIFTH CAUSE OF ACTION
### Breach of Fiduciary Duties

82.     Plaintiffs incorporate by way of this reference all of the allegations set forth above and reallege the same as though fully set forth herein.

83.     In the alternative, if it is adjudged that Sechrist is a member of Mach 1, Sechrist owes fiduciary duties to Mach 1 and Livingston and Fisher – duties of loyalty, candor, fair dealing, and the utmost good faith.

84.     Sechrist has breached his fiduciary duties to Mach 1, Livingston, and Fisher by engaging in conduct to enrich himself at the expense of Mach 1, Livingston, and Fisher.

85.     Sechrist has taken the following actions in breach of the fiduciary duties he owes to Mach 1, Livingston, and Fisher: (1) taking Mach 1's membership interest in another company, and transferring that interest to himself for his own personal interests; (2) engaging in competition against Mach 1 in the area of merchant processing and credit card services; (3) using merchant processing relationships of Mach 1 for his own personal benefit; (4) soliciting clients for call center services and providing call center services to clients without reporting such services or revenues to Mach 1; (5) causing Mach 1 to pay compensation to Sechrist that is not warranted based on the work performed by Sechrist, in order to serve his personal interests; (6) opposing the adoption of a compensation scheme that benefits the company, in order to obtain more money for himself; (7) attempting to force Livingston and Fisher to work for lower than reasonable compensation, in order to obtain more money for himself; and (8) withholding information regarding his activities from Mach 1.

86.     Mach 1, Livingston, and Fisher have suffered damages as a direct and proximate result of Sechrist's breach of the fiduciary duties he owes.

**AMENDED COMPLAINT**                                        - 16 -
Client:1577467.1

87.   Plaintiffs assert this claim in the alternative, without prejudice to the other claims asserted by Plaintiffs contingent on the Court's rulings in this matter.

## SIXTH CAUSE OF ACTION
### Breach of Operating Agreement

88.   Plaintiffs incorporate by way of this reference all of the allegations set forth above and reallege the same as though fully set forth herein.

89.   In the alternative, if it is adjudged that Sechrist is a member of Mach 1, Sechrist has violated the operating agreement of Mach 1, agreed to between the parties.

90.   Sechrist has insisted on payment on terms different than agreed to by the parties as their operating agreement.  In particular, Sechrist has insisted on payment without regard to production of revenues and without regard to performance, and without regard to work performed.

91.   By engaging in the conduct stated above, Sechrist has breached and wrongfully repudiated the operating agreement of Mach 1.

92.   Mach 1, Livingston, and Fisher are entitled to direct and consequential damages, including damages for future lost profits, as a result of Sechrist's breach and wrongful repudiation of the parties' operating agreement.

93.   Plaintiffs assert this claim in the alternative, without prejudice to the other claims asserted by Plaintiffs contingent on the Court's rulings in this matter.

## SEVENTH CAUSE OF ACTION
### Breach of Covenant of Good Faith and Fair Dealing

94.     Plaintiffs incorporate by way of this reference all of the allegations set

forth above and reallege the same as though fully set forth herein.

95.     In the alternative, if it is adjudged that Sechrist is a member of Mach 1,

Sechrist has violated the contractual obligation of good faith and fair dealing, required for

members of an Idaho limited liability company.

96.     Sechrist intentionally deprived Mach 1, Livingston, and Fisher of the

benefits they reasonably expected to obtain under the parties' agreement.

97.     Mach 1, Livingston, and Fisher are entitled to direct and consequential

damages, including damages for future lost profits, as a result of Sechrist's breach of the

contractual obligation of good faith and fair dealing, required for members of an Idaho limited

liability company.

98.     Plaintiffs assert this claim in the alternative, without prejudice to the other

claims asserted by Plaintiffs contingent on the Court's rulings in this matter.


## EIGHTH CAUSE OF ACTION
### Conversion

99.     Plaintiffs incorporate by way of this reference all of the allegations set

forth above and reallege the same as though fully set forth herein.

100.     In the alternative, if it is adjudged that Sechrist is a member of Mach 1,

Sechrist has converted opportunities and contractual relationships that belong to Mach 1 to his

own personal benefit.

**AMENDED COMPLAINT**                                    - 18 -
Client:1577467.1

101.    Mach 1, Livingston, and Fisher have suffered damages as a direct and proximate result of Sechrist's conversion of Mach 1 opportunities and contractual relationships.

102.    Plaintiffs assert this claim in the alternative, without prejudice to the other claims asserted by Plaintiffs contingent on the Court's rulings in this matter.

### NINTH CAUSE OF ACTION
### Constructive Fraud

103.    Plaintiffs incorporate by way of this reference all of the allegations set forth above and reallege the same as though fully set forth herein.

104.    In the alternative, if it is adjudged that Sechrist is a member of Mach 1, Sechrist is liable to Mach 1, Livingston, and Fisher for constructive fraud arising from the conduct stated above.

105.    Sechrist owed fiduciary duties of loyalty, candor, fair dealing, and the utmost good faith to Mach 1, Livingston, and Fisher.

106.    Sechrist represented to Livingston and Fisher that if he were allowed to be a member of Mach 1, he could and would contribute a valuable call center relationship which would produce substantial income for Mach 1.

107.    Sechrist intended that Mach 1, Livingston, and Fisher rely on his representation that he could and would contribute a valuable call center relationship which would produce substantial income for Mach 1.

108.    Mach 1, Livingston, and Fisher reasonably relied on Sechrist's representation, by making substantial payments to Sechrist that were founded on the truth of Sechrist's representation.

109.     After making substantial payments to Sechrist, it became clear that his representation that he could and would contribute a valuable call center relationship which would produce substantial income for Mach 1 was not true.

110.     Sechrist has breached his fiduciary duties to Mach 1, Livingston, and Fisher by failing to be truthful about the call center relationship he had agreed to contribute to Mach 1.

111.     Mach 1, Livingston, and Fisher have suffered damages as a direct and proximate result of Sechrist's misrepresentation.

112.     Plaintiffs assert this claim in the alternative, without prejudice to the other claims asserted by Plaintiffs contingent on the Court's rulings in this matter.

## TENTH CAUSE OF ACTION
### Breach of Fiduciary Duty: Peter Graver

113.     Plaintiffs incorporate by way of this reference all of the allegations set forth above and reallege the same as though fully set forth herein.

114.     In the alternative, if it is adjudged that Sechrist is a member of Mach 1, Sechrist has violated his duties to Mach 1, Livingston, and Fisher by acting to induce a former employee of Mach 1 to breach his contract with Mach 1.

115.     In or about April 2009, Peter Graver signed the Confidentiality Agreement, whereby Graver agreed that, for a period of two (2) years, he would not provide services to any of Mach 1's clients and would refrain from offering any services to Mach 1 clients.

116.     In the Confidentiality Agreement, Graver also agreed that he would not use any confidential information belonging to Mach 1, including information regarding Mach 1's

**AMENDED COMPLAINT** - 20 -
Client:1677467.1

banks, independent services offices, and providers.  Graver agreed that he would use reasonable

means to protect Mach 1's confidential information, including information regarding Mach 1's

relationships.  Graver agreed that he would not make use of the information gained while

working for Mach 1 for any purpose other than performance of his responsibilities for Mach 1.

 117. Sechrist had knowledge of the terms and conditions of the Confidentiality

Agreement.

 118. In violation of the Confidentiality Agreement, since August 17, 2009,

Sechrist and Graver have worked together to provide merchant processing services to Mach 1

clients.  Sechrist and Graver have also used the information gained regarding Mach 1's providers

for their own purposes and business efforts to provide merchant processing services to others.

 119. Sechrist intentionally caused Graver to breach his contract with Mach 1.

 120. Mach 1, Livingston, and Fisher have suffered damages as a direct and

proximate result of Sechrist's interference with the contract between Graver and Mach 1.

 121. Plaintiffs assert this claim in the alternative, without prejudice to the other

claims asserted by Plaintiffs contingent on the Court's rulings in this matter.

## ELEVENTH CAUSE OF ACTION
### Tortious Interference with Contract

 122. Plaintiffs incorporate by way of this reference all of the allegations set

forth above and reallege the same as though fully set forth herein.

 123. In or about April 2009, Peter Graver signed a Confidentiality Agreement,

whereby Graver agreed that, for a period of two (2) years, he would not provide services to any

of Mach 1's clients and would refrain from offering any services to Mach 1 clients.

**AMENDED COMPLAINT**     - 21 -
Client:1577467.1

124.   In the Confidentiality Agreement, Graver also agreed that he would not use any confidential information belonging to Mach 1, including information regarding Mach 1's banks, independent services offices, and providers.  Graver agreed that he would use reasonable means to protect Mach 1's confidential information, including information regarding Mach 1's relationships.  Graver agreed that he would not make use of the information gained while working for Mach 1 for any purpose other than performance of his responsibilities for Mach 1.

125.   Sechrist had knowledge of the terms and conditions of the Confidentiality Agreement.

126.   Sechrist is a friend and business associate of Graver.

127.   In violation of the Confidentiality Agreement, since August 17, 2009, Sechrist and Graver have worked together to provide merchant processing services to Mach 1 clients.  Sechrist and Graver have also used the information gained regarding Mach 1's providers for their own purposes and business efforts to provide merchant processing services to others.

128.   Sechrist intentionally interfered with this contract and caused Peter Graver to breach his contract with Mach 1.

129.   Sechrist had no right to interfere in the contract between Graver and Mach 1.  Instead, if Sechrist is considered a member of Mach 1, Sechrist had a duty of loyalty to Mach 1 and a duty to enforce the contract to prohibit Graver's conduct against Mach 1's interests.

130.   Mach 1 has been injured as a result of the breach by Peter Graver of his contract with Mach 1.

## TWELFTH CAUSE OF ACTION
### Declaratory Judgment: Contribution

131.    Plaintiffs incorporate by way of this reference all of the allegations set forth above and reallege the same as though fully set forth herein.

132.    In the alternative, in the event Sechrist is adjudged to be a member of Mach 1, the Court should require Sechrist to make the call center contribution he agreed to as a condition of his membership in Mach 1.

133.    In particular, Sechrist must pay any and all revenues he has received or that he will receive from any call center relationship to Mach 1.

134.    Plaintiffs are entitled to a declaratory judgment that Sechrist is required to make the call center contribution he agreed to as a condition of his membership in Mach 1, and that Sechrist must pay any and all revenues he has received or that he will receive from any call center relationship to Mach 1.

135.    Plaintiffs assert this claim in the alternative, without prejudice to the other claims asserted by Plaintiffs contingent on the Court's rulings in this matter.

## THIRTEENTH CAUSE OF ACTION
### Declaratory Judgment: LLC Rights

136.    Plaintiffs incorporate by way of this reference all of the allegations set forth above and reallege the same as though fully set forth herein.

137.    By engaging in the conduct described above, Sechrist has deprived Mach 1, Livingston, and Fisher of rights guaranteed by Idaho law and the agreement the parties formed when they officially organized the company.

138.    In the event Sechrist is adjudged to be a member of Mach 1, then Mach 1,

Livingston, and Fisher are entitled to declaratory judgment that: (1) Sechrist must provide full

and continuing information regarding his activities regarding merchant processing to Mach 1,

Livingston, and Fisher; (2) Sechrist must provide full and continuing information regarding his

call center relationships, services, and revenues to Mach 1, Livingston, and Fisher; (3) Sechrist

must account for and provide all revenues he has received or will receive from merchant

processing services to Mach 1; and (4) Sechrist must account for and provide all revenues he has

received or will receive from call center services or relationships to Mach 1.

139.    Plaintiffs assert this claim in the alternative, without prejudice to the other

claims asserted by Plaintiffs contingent on the Court's rulings in this matter.


## FOURTEENTH CAUSE OF ACTION
### Declaratory Judgment: Member Compensation

140.    Plaintiffs incorporate by way of this reference all of the allegations set

forth above and reallege the same as though fully set forth herein.

141.    In the alternative, in the event Sechrist is adjudged to be a member of

Mach 1, the Court should rule that Mach 1 can compensate its members based on the value of

their performance.

142.    Sechrist asserts that he has a right to one-third of all revenues received by

Mach 1, paid without compensating individual members for labor and services and without

compensating individual members based upon the merits of the work they have accomplished.

143.    Plaintiffs assert that pursuant to the Idaho Uniform Limited Liability Act,

distributions made by the company consist only of the net profits of the company after payments

of reasonable compensation to the individual members for the labor and services provided by the

members.  Plaintiffs assert that the term "distribution" should not be construed to include

amounts constituting reasonable compensation for present or past services of the individual

members.

144.   Plaintiffs are entitled to a declaratory judgment establishing that Mach 1

can compensate its members based on the value of their performance and the income such

members produce.

145.   Plaintiffs assert this claim in the alternative, without prejudice to the other

claims asserted by Plaintiffs contingent on the Court's rulings in this matter.


## FIFTEENTH CAUSE OF ACTION
### Dissolution

146.   Plaintiffs incorporate by way of this reference all of the allegations set

forth above and realleges the same as though fully set forth herein.

147.   In the alternative, in the event Sechrist is adjudged to be a member of

Mach 1, Plaintiffs seek a dissolution of the company pursuant to the terms of the Idaho Uniform

Limited Liability Act.

148.   Based on the allegations set forth above and based on the facts regarding

the desires of Mach 1's clients, it is not reasonably practicable to carry on the company's

activities in conformity with the certificate of organization and the operating agreement.

149.   Sechrist will not agree to a performance-based compensation system, and

maintains that adopting a performance-based system without his consent is contrary to law.

150.   At the same time, Livingston and Fisher will not perform services for the

company without a plan in place to compensate them based on the amount of service and labor

expended and based upon the merits of the work they have accomplished.  Livingston and Fisher

should not be expected to provide services and labor without being fully compensated for their work.

151.   As a result, Plaintiffs request that the Court enter an order dissolving the Mach 1 pursuant to the Idaho Uniform Limited Liability Company Act on the grounds that it is not reasonably practicable to carry on the company's activities in conformity with the certificate of organization and the operating agreement.

152.   Plaintiffs assert this claim in the alternative, without prejudice to the other claims asserted by Plaintiffs contingent on the Court's rulings in this matter.

## ATTORNEY'S FEES

153.   Plaintiffs are entitled to an award of attorney's fees against the defendant Sechrist pursuant to Idaho Code § 12-120, and § 12-121, and pursuant to other Idaho law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief against defendant Sechrist as follows:

1.   Pursuant to the *First Cause of Action: Declaratory Judgment – Membership Interest*, a declaratory judgment that Sechrist did not gain any membership interest in Mach 1, and that Sechrist is not a member of Mach 1.

2.   Pursuant to the *Second Cause of Action: Unjust Enrichment / Restitution*, a return of all payments made to Sechrist by Mach 1.

3.   Pursuant to the *Third Cause of Action: Repayment of Advances*, repayment of all advances made to Sechrist by Mach 1.

**AMENDED COMPLAINT**
Client:1577467.1                                                                26

4.     Pursuant to the *Fourth Cause of Action: Liability for Contribution*, a judgment from the Court that Sechrist is obligated to contribute money equal to the value of the contribution which Sechrist agreed to make, but which has not been made, and for an award of damages in such amount.

5.     Pursuant to the *Fifth Cause of Action: Breach of Fiduciary Duties*, an award of damages suffered by Mach 1, Livingston, and Fisher resulting from Sechrist's breach of the fiduciary duties he owes.

6.     Pursuant to the *Sixth Cause of Action: Breach of Operating Agreement*, an award of damages resulting from Sechrist's breach and wrongful repudiation of the parties' operating agreement.

7.     Pursuant to the *Seventh Cause of Action: Breach of Covenant of Good Faith and Fair Dealing*, an award of damages resulting from Sechrist's breach of the contractual obligation of good faith and fair dealing, required for members of an Idaho limited liability company.

8.     Pursuant to the *Eighth Cause of Action: Conversion*, an award of damages resulting from Sechrist's conversion of corporate opportunities and relationships.

9.     Pursuant to the *Ninth Cause of Action: Constructive Fraud*, an award of damages suffered by Mach 1, Livingston, and Fisher as a result of Sechrist's misrepresentation regarding his contribution to Mach 1.

10.     Pursuant to the *Tenth Cause of Action: Breach of Fiduciary Duty – Peter Graver*, an award of damages suffered by Mach 1, Livingston, and Fisher as a result of Sechrist's interference with the obligations Graver owed to Mach 1.

11.     Pursuant to the *Eleventh Cause of Action: Tortious Interference with Contract*, for an award of damages caused to Mach 1 as a result of Sechrist's interference with the contract between Graver and Mach 1.

12.     Pursuant to *Twelfth Cause of Action: Declaratory Judgment – Contribution*, for a declaratory judgment that Sechrist is required to make the call center contribution he agreed to as a condition of his membership in Mach 1, and that Sechrist must pay any and all revenues he has received or that he will receive from any call center relationship to Mach 1.

13.     Pursuant to *Thirteenth Cause of Action: Declaratory Judgment – LLC Rights*, for a declaratory judgment that Sechrist must provide full and continuing information to Mach 1 regarding his activities regarding merchant processing and call center services, and for a declaratory judgment that Sechrist must account for and pay all revenues received from such activities.

14.     Pursuant to the *Fourteenth Cause of Action: Declaratory Judgment – Member Compensation*, for a declaratory judgment establishing that the term "distribution" should not be construed to include amounts constituting reasonable compensation for present or past services of the individual members, and establishing that Mach 1 can establish a plan for the reasonable compensation of its members based on a majority vote of its members.

15.     Pursuant to the *Fifteenth Cause of Action: Dissolution*, for entry of an order dissolving the company pursuant to the Idaho Uniform Limited Liability Company Act on the grounds that it is not reasonably practicable to carry on the company's activities in conformity with the certificate of organization and the operating agreement.

**AMENDED COMPLAINT**
Client:1677467.1

16.     For an award of attorney's fees and costs in an amount deemed just and reasonable by the Court; and

17.     For such further and additional relief, at law or in equity, as this Court deems just and proper.

DATED this 26th day of March, 2010.

MOFFATT, THOMAS, BARRETT,
ROCK & FIELDS, CHARTERED


By_____
    Lee Radford – Of the Firm
    Attorneys for Plaintiff

**AMENDED COMPLAINT**
Client:1577467.1
                                        - 29 -